## Theodore C. Keller et al., Appellants, v. Evan Fitzgerrell et al., Appellees.

1. CONTRACTS—*when duration not extended beyond limit fixed by terms.* The contract in question in this case construed and held not to create a joint adventure of such a character that such adventure would be implied to continue until concluded and that the same expired at the time expressly fixed in the instrument in question. *Held,* however, under the evidence, that such adventure was by tacit agreement continued beyond the stipulated time fixed for expiration.

2. APPEALS AND ERRORS—*when finding of chancellor not disturbed.* Where the witnesses are heard by the chancellor his findings of fact will not be disturbed unless clearly erroneous.

3. STATUTE OF FRAUDS—*how must be availed of.* In order to avail of the Statute of Frauds as a defense, it must be pleaded. If the applicability of the statute is as disclosed in chancery by way of answer, it is incumbent upon the complainants if they desire to avail of the statute, to do so by amendment of their bill.

4. STATUTE OF FRAUDS—*when does not apply.* The Statute of Frauds is inapplicable to an agreement for the sale of options which has been fully executed by the acceptance of the purchase money.

Bill in equity. Appeal from the Circuit Court of Franklin county; the Hon. J. R. CREIGHTON, Judge, presiding. Heard in this court at the March term, 1910. Affirmed. Opinion filed November 12, 1910.

UNDERWOOD & SMYSER, B. W. POPE and I. R. SPILMAN, for appellants; ARTHUR W. UNDERWOOD, of counsel.

GEORGE B. GILLESPIE, for appellees; W. S. CANTWELL, WEBB & WEBB and GILLESPIE & FITZGERALD, of counsel.

MR. JUSTICE SHIRLEY delivered the opinion of the court.

Appellants, Theodore C. Keller and A. B. Steffins, filed a bill in equity against Evan Fitzgerrell, F. H. Stamper and S. B. Espy designated the defendants (and hereinafter called the appellees) and Loren N. Wood and others called in the bill the co-defendants.

The bill averred that on May 25, 1907, appellants entered into the following written agreement:

"This agreement, made this 25th day of May, A. D. 1907, by and between Evan Fitzgerrell and F. H. Stamper, of Benton, Illinois, party of the first part, and T. C. Keller and A. B. Steffens, of Chicago, Illinois, party of the second part, to-wit:

"Whereas, the party of the first part hold by themselves property and certain options on property, covering the coal, oil and gas underlying all or part of Sections 17, 18, 7, 8, 4, 5 & 6, Township 5 South, Range 2 East, and Section 1, Township 5 South, Range 1 East; said options expiring July 1, A. D. 1907, or later, and calling for a purchase price of Twenty-seven Dollar per acre, with an additional commission of One Dollar per acre to be paid to Messrs. Kirkpatrick and Hule.

"And Whereas, it is desired to secure the co-operation of the second party in the purchase or sale, lease or other disposal of said property and options.

"Now, then, it is hereby agreed by and between the parties hereto, that in the event of either party being able to sell, lease, or otherwise advantageously dispose of said property and options, the profit derived from such sale, lease or other disposal, after deducting therefrom all actual expenses in the transaction of both parties, shall be divided in equal parts between first and second party.

"It is further agreed that the parties hereto will promptly cause a drill hole to be bored to and through the coal in a spot in Section 8, Township 5 South, Range 2 East, to be mutually agreed upon, the cost of such drilling to be borne in equal parts by both parties hereto, unless a purchaser is meanwhile found who will undertake the drilling at his own expense; the drilling is to be prosecuted with due diligence in order that the coal may be ascertained prior to July 1. It is understood that at or just before the time that the drill reaches the coal, both parties hereto shall be notified and further boring shall be stopped in order to give both parties an opportunity to be present, or send their representative to be present when the drill goes through the coal and the coal core is taken up.

"It is further understood and agreed that if the

boring on Section 8, Township 5 South, Range 2 East, discloses the presence of sufficient and satisfactory coal and satisfactory conditions, and if, on the expiration of option, the property covered by the same has not been sold, leased or otherwise disposed of, then the parties hereto shall, at their joint expense, buy under their options, the coal, oil and gas under the following described land: The J. F. Rickert land, 226 acres, situated in Section 7, Township 5 South, Range 2 East; and if necessary, or found proper, also the J. F. Kirkpatrick land, 360 acres, situated in Sections 8, 17 and 18, Township 5 South, Range 2 East; also any adjoining land that it may be necessary, or thought proper, to acquire in order to secure a compact property, it being understood that where a prolongation of the operations can be secured on the previous, or better terms, this shall be done in preference to buying the property.

"It is further understood that if sufficient and satisfactory coal and conditions are found in Section 8, Township 5 South, Range 2 East, and if any of the above described property is jointly bought, then the party of the second part shall buy from the party of the first part, an undivided one-half interest in the coal, oil and gas underlying the North ½ of the N. E. ¼ of the N. W. 11-44 of Section 17, Township 5 South, Range 2 East, and the South ½ of the S. E. ¼ of Section 8, Township 5 South, Range 2 East, 200 acres, more or less; the full valuation to be rated at Twenty-seven ($27) Dollars per acre.

"It is further understood and agreed that if first party secures, directly or indirectly, a prolongation or renewal with or without changes of any options covered by this contract, this same agreement shall apply to and be binding upon the parties hereto affecting such options so taken, extended or acquired for and during the entire year of 1907.

"(Signed)     Evan Fitzgerrell,    (Seal)
"F. H. Stamper,
"Parties of first part.
"T. C. Keller,      (Seal)
"A. B. Steffens,
"Parties of second part."

It was further averred that on August 24, 1907, the

same parties entered into a further written agreement as follows:

"Whereas, Evan Fitzgerrell, S. B. Espy and F. H. Stamper, parties of the first part, and T. C. Keller, party of the second part, are the owners of the coal, oil and gas underlying the surface of the following described land, to-wit: The East Half of the Southeast Quarter, and the Northwest Fourth of the Southwest Quarter, and the South half of the Northeast Quarter, and the Southeast Fourth of the Northwest Quarter, except the west three acres of the last described tract, all in Section Seven (7), and the North Half of the Northeast Quarter and the Northeast Fourth of the Northwest Quarter of Section Seventeen (17), and the South Half of the Southeast Quarter of Section Eight (8), all in Township Five (5) South, Range Two (2) East, of the 3rd P. M., in Franklin County, Illinois, the parties of the first part owning an undivided one-half thereof and the party of the second part an undivided one-half thereof, in consideration of the mutual benefit to be derived by said parties working together, and of One Dollar paid by each party to the other, the receipt of which is hereby acknowledged. It is hereby agreed that any one of the persons whose names are subscribed hereto shall have the privilege of selling all of said land for a period of one year from this date at a price of not less than thirty-five dollars per acre, and that if such sale is made then each of the parties hereto will execute his proper deed of conveyance thereto, it being understood that full consideration of such, less the necessary expenses, shall be divided among the parties in accordance with their interests in fee in said land.

"Dated at Benton, Illinois, August 24, A. D. 1907.
"Executed in duplicate.
"EVAN FITZGERRELL,
"S. B. ESPY,
"F. H. STAMPER,
"Parties of first part.
"THEO. C. KELLER,
"Party of second part."

It was further alleged that at the time said agreements were entered into, a partnership agreement was formed whereby each party became the owner of one-half interest in the coal purchased and the options; that under said first agreement they purchased the coal under 426 acres, each party paying one-half the purchase money and that a hole was drilled at joint expense on a tract of said land; that said options were taken in the name of appellee Fitzgerrell who held them in trust for appellants and appellees; that the parties to said agreements made deeds to the coal rights so owned by them to Fitzgerrell and procured deeds from the owners of the lands covered by the options amounting to some 4,000 acres to him on the agreement that he should hold title thereto for the joint benefit of all the parties to the agreements; that said Fitzgerrell without the knowledge or consent of appellants, delivered to one Lambert a deed to said coal rights; that Lambert conveyed the same to one Harper who conveyed the same to Wood and others at the price of $35 per acre; that the profits on said option coal rights were $8 per acre which appellees claim, and deny the right of appellants to share therein; that Wood and others are paying said profits to appellees and the bill prays for an accounting from appellees and an injunction restraining the payment by Wood of said profits to appellees.

The appellees answered the bill denying a partnership and any agreements except those set forth; deny that the options were held by Fitzgerrell as trustee; allege said options by their terms expired July 1, 1907; that after the execution of the first agreement above set forth, they were renewed until December 31, 1907, at which time they were to expire and did expire, and deny that thereafter any options were taken for the benefit of appellants or that a conveyance of them was made by Fitzgerrell to Lambert; deny they negotiated with Lambert for the benefit of appellants except as to

the land owned in fee by appellants and appellees; deny appellants had any interest in the lands and options except the 426 acres owned in fee; allege that appellant Keller for himself and Steffens disposed of their entire interest in the transaction to Stamper for the sum of $7,455 which was paid on or before February 1, 1909, and received by appellant Keller.

The co-defendant Wood answered and filed a cross bill as a purchaser of said coal rights tendering the purchase money into court to abide the order to pay to whomsoever should be found entitled thereto. To the cross bill answers were filed and replications being filed and the cause at issue, testimony was heard and the court found the equities with appellees and entered a decree dismissing the bill.

Numerous errors are assigned, but the main question presented is the alleged error of the court in finding the equities against appellants and dismissing the bill.

This question involves two propositions, one a construction of the agreement of May 25, 1907, the other whether the appellants in the month of January, 1909, sold to appellees all their interest in the coal held in fee and in the options held by appellees.

The contention of appellants is that the agreement created a joint adventure in the options which was in the nature of a partnership and as such it imposed upon those associated in it the duty of fair dealing between themselves in the enterprise and it is contended there being such relation, the undertaking must continue until the enterprise is concluded although the duration of the joint adventure is fixed by the articles.

It must be conceded the agreement did not embrace any options not taken or extended or acquired during the year 1907. This is expressly set forth in the agreement.

The options had been taken and were held by appellees, or for their benefit, and appellants had no interest therein except such as they acquired by the terms of

the agreement. They had invested neither time, labor nor money in securing them. Appellees had secured them and in addition thereto the fee in some coal as a nucleus about which they might create a field or territory, and had secured the fee so as to better prevent the acquirement of the field by others. They desired to dispose of these coal rights and the object was to associate some one in the enterprise who would by reason of supposed superior advantages aid them in making a sale. It was not the character of a joint adventure where it would be implied it should continue until concluded.

As to all options not taken, extended or acquired prior to December 31, 1907, the stipulated term when the joint interest should expire, was expressly fixed at that time, and so far as the agreement itself was concerned, appellants had no interest in the profits to be derived from the options not taken, extended or acquired within that time. When the specified time of a co-partnership or joint adventure has expired, the partnership or adventure is dissolved without any further action on the part of the partners or parties to the adventure.

It is true, however, that such an agreement may be continued after the stipulated time by express or tacit agreement and we are of opinion from the conduct of the parties as shown by the testimony that there was a tacit agreement that it should continue beyond the stipulated time. The evidence shows appellees, long after December 31, 1907, recognized appellants were still interested in the options.

Upon the other proposition that appellants in January, 1909, by agreement with appellees disposed of their interest in the options, the evidence is conflicting. It was claimed in the answer and on the trial that appellants relinquished to appellees their interest in the whole transaction including the 426 acres of coal held in fee for the sum of $7,455. Appellee, Fitzgerrell,

who was placed on the stand by appellants, testified on
cross examination that he went into the store of Stam-
per on the 10th or 12th of January, 1909, and found
appellee Keller and Stamper there and Stamper said
"Mr. Keller reports the Lambert deal has fallen
through and is no good" and further said "I have
bought Mr. Keller's interest." He further testified
that both Stamper and Keller went ahead and repeated
the trade and that Stamper said he was to give Keller
$7,455; that Keller replied that was right, that if Lam-
bert didn't take the land he Keller wanted to clean it
up, it was not adjoining his land, that he was sick and
tired of the holding and wanted to clean up the deal.
Fitzgerrell further states that he Fitzgerrell included
the options as well as the 426 acres of coal, that ap-
pellees were to pay Keller on or before February 1,
1909, and sent him a draft for $7,455 which was cashed
by Keller.

This testimony is corroborated by appellee Stamper
who testified that he told Keller in December, 1908,
that Lambert was sick and would not take the prop-
erty; that between the 1st and 20th of January Keller
came to his store and asked how the coal deal was get-
ing on, that Lambert was sick and gone to California
and the deal was off; that he Stamper said he thought
not and thought Lambert's associates would carry out
the deal; that Keller answered he knew they would
not; that he was tired of it and wanted to sell out;
that he had all the land he wanted and all the business
he could attend to and that he calculated his interest
at $7,455 for his entire interest in the land and options;
that the witness then called his attention to the fact
he had made a deed with the appellees conveying the
426 acres of coal to Lambert and if the witness could
arrange with Lambert to take up the property without
arranging for another deed, would it be all right to
take it up that way and send him the money and he
answered yes, when he received the $7,455 he would be

satisfied and have nothing more to do with the transaction and if the deed to Lambert could not be used, he would make another deed. Stamper further stated that Fitzgerrell came in, and in the presence of witness and Keller went over the terms of the transaction. There are some letters and statements of Stamper in the record that tend to weaken his testimony and to discredit it, but there is ample corroboration of the alleged transaction by Fitzgerrell and in some degree by Ross Webb a clerk in the store where the alleged conversation was had.

Appellant Keller testified he had no such conversation at the store as testified by Fitzgerrell and Stamper in January, 1909, and never talked with them about selling his interest in the option; he also stated he did not recall saying at any time he was sick of the transaction and wanted to get out of it, nor that he would turn over the 426 acres of coal and his interest in the options for about $7,000.

It is the settled rule in chancery cases that where the witnesses are heard by the chancellor, his findings of fact should be seen to be clearly erroneous to warrant a reversal. We have examined and considered the testimony in the case both oral and documentary and the findings of the chancellor are not so erroneous upon the question of the alleged sale by appellants to appellees that we would be justified in reversing them.

It is urged that if the alleged oral agreement to sell had been established by the evidence it would not be a valid agreement by reason of the statute of frauds and perjuries, since it involved an interest in real estate. There are two reasons why the statute does not apply, either of which would be sufficient.

To make available the statute, it must be pleaded, which was not done in this case. It is true the question of its applicability in the cause was first disclosed by the answers of appellants which set up the oral agreement as a defense, and the only replication in chancery

pleading being a general one, the statute could not be pleaded by way of replication, but if the statute was to be relied upon it should have been pleaded by way of amendment to the bill. White v. Morrison, 11 Ill. 361.

"It is a settled principle in equity that a party to avail himself of the benefit of the statute of frauds, must specially insist on it; if he fail to do so he will be considered as having waived the advantage to be derived from its provisions." Story's Eq. Pl., 590; Tarleton v. Vietes, 1 Gil. 470.

"The defendant in order to avail himself of the benefit of the statute must set it up by plea or insist on it in his answer. The only difficulty is in determining how the complainant may take advantage of it by applying it to a transaction first introduced into the case by the answer. The better opinion is he should do so by amending his bill." Tarleton v. Vietes, *supra;* White v. Morrison, *supra.*

We are of opinion also that the agreement for the sale of the options having been fully executed by the acceptance of the purchase money by appellants as found by the chancellor, the statute of frauds, even if pleaded, would furnish no answer to the agreement.

Other alleged errors assigned not being relied upon in the argument they will be regarded as waived.

The decree of the Circuit Court will be affirmed.

*Affirmed.*